IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

MIGUEL MARTINEZ,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

Civil Action No. CIV-21-33-F

## COMPLAINT

### Jurisdiction & Venue

1. Miguel Martinez, Plaintiff, pro se, brings this civil suit against Defendant United States of America under the Federal Tort Claims Act for relief from the commission of tortious acts. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346(b)(1), 2671 et seq.

2. Venue is proper in this District as the place "wherein the act or omission complained of occurred," 28 U.S.C. §§ 1391(b)(2), 1402(b).

3. At all times relevant, Plaintiff, a United States citizen, was a prisoner confined by Defendant at the Federal Correctional Institution in El Reno, Oklahoma, a Bureau of Prisons facility.

### Parties

4. Plaintiff is presently confined at the Federal

- 1 -

Correctional Institution in Seagoville, Texas. His present mailing address is: Miguel Martinez, # 39201-177, FCI Seagoville, 2113 N. Hwy. 175, P.O. Box 9000, Seagoville, TX 75159.

5. The Bureau of Prisons, a component of the Department of Justice, is an agency of Defendant United States of America. It can be served at: Attorney General, 950 Pennsylvania Ave. NW, Washington, DC 20530-0001.

### Facts

6. On March 12, 2020, at approximately 5:15am - 5:30am, while asleep in his cell in A Unit, Cell 222 West, FCI El Reno, two inmates entered Plaintiff's cell and struck him repeatedly, waking him. One of the inmates held a knife, and told Plaintiff that he had until 6:00am -- when the compound would open for the day -- to "get off the yard."

7. Plaintiff immediately left his cell to seek help, but the unit officer was not in his office. Plaintiff sought out his co-defendant in his criminal case, Mr. David Sheppard, who was housed in Cell 101 West in the same unit, and provided the facts and his personal details to Mr. Sheppard. He then returned to his own cell, secured his property in his locker with an institution-issued Master lock, and waited for the first opportunity to approach Special Investigative Services (SIS).

8. At approximately 6:00am, the compound was opened by staff and Plaintiff went directly to the SIS office. He told officials there that he could no longer be on the yard and that his life had been threatened. He was then placed by

- 2 -

officials in the Special Housing Unit (SHU), for segregation.

9. Approximately one month later, Plaintiff learned that, when officials "packed out" his property, a large amount of valuables were missing. Plaintiff was told by Officer Cooper (the SHU property officer, who took Plaintiff from his segregation cell to review the property remaining) that the missing property had been stolen, as it had not been properly guarded by officials who "packed it out" in the housing unit.

10. Plaintiff learned from the "property sheet" stored with his remaining property that Officer Harvey had been the staff member to "pack out" his property. Plaintiff found this strange because Harvey worked the 4:00pm-12:00am "late shift"; Plaintiff asked Officer Harvey what had happened to the missing property, and Officer Harvey said that he did not know; that when he had come on duty on March 12th, Plaintiff's property had not yet been "packed out," but that Officer Fenton was the one responsible for that task at that time because he had been scheduled to work the unit from 8:00am-4:00pm; alternatively, Officer Harvey stated, it would have been Officer Krey's responsibility as he had been on duty when the assault transpired. According to Officer Harvey, protocol dictated that SIS Officer Holland should have immediately contacted the unit officer on duty to direct that Plaintiff's cell and property be secured at the time of Plaintiff's report.

11. At the time of the assault, Plaintiff's cellmate, Mr. Francisco Izaguirre, had been preparing to go to G.E.D. class; according to him, he observed several Black inmates

- 3 -

in the cell upon Mr. Izaguirre's return from G.E.D. class,
and that Plaintiff's locker had already been broken into
and items stolen.  Mr. Izaguirre stated that he observed
inmates holding Plaintiff's photo album, going through it,
taking out pictures; that Mr. Izaguirre told them to get out,
that they became aggressive, that he obtained assistance from
other Hispanic inmates, and that the matter nearly turned
into a race riot..

12. According to Mr. Izaguirre, the Black inmates gave
to him the remaining photos and photo album when they left
the cell.  But aside from these, a large amount of Plaintiff's
personal photographs and property were stolen due to the
failure of prison officials to secure Plaintiff's property
in accordance with procedure.  Camera footage should be
available to demonstrate these facts: Cameras observed Cell
222 West and all of A Unit during the times at issue.

13. On or about May 20, 2020, while confined by Defendant
in the SHU at FCI El Reno, Plaintiff requested and received,
from his assigned Correctional Counselor, Mr. Davis, forms --
and copies of receipts for merchandise -- for the filing of a
tort claim as to the property improperly taken from his pos-
session as a result of the actions or omissions by government
employees.  These papers Plaintiff completed and submitted, to
the Bureau of Prisons' South Central Regional Office, that
same day.

14. According to the U.S. Postal Service, this article of
mail (CMRR # 7017 2400 0001 1765 7516) was received and signed

- 4 -

for by "Aguilar" at Defendant's South Central Regional Office on May 28th.

15. By letter dated June 8, 2020, Defendant acknowledged its May 26 (sic), 2020, receipt of Plaintiff's Administrative Tort Claim # TRT-SCR-2020-05019, which letter was signed by Brenda K. Victor on behalf of Jason A. Sickler, Regional Counsel.

16. BOP operations were interrupted during this time "due to civil unrest across the country," resulting in a "National Lockdown," according to FCI El Reno Warden S. R. Grant's June 1, 2020, memorandum.

17. The acknowledgment letter indicated that Defendant should respond within 6 months, or "on or before November 25, 2020." Plaintiff has received no further communication from Defendant regarding the tort forms he submitted on May 20, 2020. Thus, under 28 U.S.C. § 2401(b), the instant civil action is timely.

18. As submitted to Defendant during the administrative process, on attachments including 26 pages of sales invoices and a 2-page itemized list, Defendant is liable for the loss or theft of the following property purchased and possessed by Plaintiff:

| Qty. | Description | Cost |
| --- | --- | --- |
| 1 | Versace glasses (Transition/prescription) | $750.00 |
| 1 | Tweezers | 1.15 |
| 1 | 4X ash gray t-shirt | 6.50 |
| 1 | 4X Russell sweatpants | 15.50 |
| 1 | Combination lock | 6.50 |
| 1 | Toenail clippers | 1.15 |

- 5 -

| | | |
|---|---|---|
| 1 | Shave bag | 5.50 |
| 1 | Sandisk clip sport MP3 player | 88.40 |
| 1 | Combination lock | 6.80 |
| 1 | Toenail clipper | 1.15 |
| 1 | Tweezers | 1.15 |
| 2 | Pro soap dish | 1.40 |
| 2 | Toothbrush holder | 1.00 |
| 1 | Tweezers | 1.15 |
| 1 | Wolverine work boots | 76.95 |
| 1 | 5X A-shirt grey 2/pk | 6.95 |
| 1 | XL weight gloves | 21.45 |
| 1 | Racquetballs 3/pk | 5.85 |
| 1 | Copy card | 5.85 |
| 1 | SPO 18-0243, 18-024 craft items | 158.05 |
| 1 | 3X ash gray T-shirt | 6.50 |
| 1 | 3X mesh shorts | 19.50 |
| 1 | Copy card | 5.85 |
| 1 | Dinner fork | .40 |
| 1 | Spoon (yellow) | .50 |
| 1 | SPO 19-0064 craft items | 69.85 |
| 1 | 3X mesh shorts | 19.50 |
| 1 | Adidas Darrango sz 9 shoes | 64.95 |
| 1 | SPO 19-0137 craft items | 120.90 |
| 1 | 3X ash grey T-shirt | 6.50 |
| 1 | Sangean radio | 45.50 |
| 1 | 3X ash sweatshirt | 20.25 |
| 1 | 3X ash sweatpants | 15.75 |
| 1 | Nike Precision II black shoes | 65.00 |
| 10 | Photo tickets | 10.00 |
| 1 | Wolverine work boots | 76.95 |
| 1 | Commissary items (Rcpt #106) | 80.25 |
| 1 | Wind-up alarm clock | 11.00 |
| 1 | Mini-flex book light | 10.75 |
| 1 | Commissary items (Rcpt #56) | 70.10 |
| 10 | Photo tickets | 10.00 |
| 2500 | Personal photos ($1.00/ea sentimental value) | 2500.00 |
| 1 | Legal work/transcripts (w/ receipts, #536) | 505.00 |

The total of the foregoing items' value is $4,897.45. All receipts and details of dates of purchase, etc., were provided to Defendant during the administrative process and may be reproduced as necessary in this litigation.

19. Defendant United States of America is the party responsible for injuries caused by the negligent or wrongful actionsoand/or omissions of any federal employee acting within the scope of his or her employment, including but not limited to injuries arising out of assault, battery, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. Cf. 28 U.S.C. § 2680(h); see also Gaines v. Pearson, 516 Fed.Appx. 724, 726 (10th Cir. 2013).

20. Defendant is liable under the Federal Tort Claims Act and the laws of the State of Oklahoma. See, e.g., FDIC v. Meyer, 510 U.S. 471, 477-78 (1994); see also Henderson v. United States, 429 F.2d 588, 590 (10th Cir. 1970). The elements of liability for the tort of conversion in Oklahoma are: (1) ownership or right of possession of the property; (2) unauthorized interference with same; and (3) extent of damages. See, e.g., Okla. Unif. Jury Instr. - Civ. 3d # 27-1 (rev. 2009). Neither wrongfulness, application of property to own use, nor bad faith are necessary, see, e.g., Steenbergen v. First Fed. Sav. & Loan of Chickasha, 1987 OK 122, 753 P.2d 1330 (Okla. 1987).

21. As a direct, proximate result of the actions and/or omissions of agents of Defendant, Plaintiff has suffered damages, including the loss of his property having monetary and other

- 7 -

value (including monetary, sentimental, and as relating to anguish over loss and difficulties associated therewith), as enumerated and described above.

## Conclusion

22. Wherefore, Plaintiff demands a jury trial, and entry of judgment against Defendant for compensatory and all available damages, plus interest, costs, fees, and such further relief as the Court deems proper.

Respectfully submitted,

MIGUEL MARTINEZ

## Affirmation

I hereby affirm, under penalty of perjury, that the foregoing is true and correct.  28 U.S.C. § 1746.

Executed on 01-11-2021 .

MIGUEL MARTINEZ

- 8 -